(110 App. Div. 561.)

### KELLY v. TOWN OF SAUGERTIES.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

1. EVIDENCE—WEIGHT AND SUFFICIENCY.

On the issue as to the weight of paving stones, testimony of a witness that some years prior thereto, on weighing horses on the scales on which the stones were weighed, the weight varied, depending on the place in which the horses stood on the scales, did not authorize the rejection of testimony of the weight of the stones on the scales after they were moved and afterwards legally tested; it being shown that, though the stones were weighed prior to the test, the scales had not been thereafter altered in any way.

97 N.Y.S.—12

2. SAME.

On the issue as to the weight of certain paving stones, testimony of witnesses, who had never weighed the stones in question, or any stones from the same quarry, as to the weight of an exact cubic foot of such stone, did not authorize the jury to discredit testimony of a witness as to the actual weight of the stone on scales thereafter tested and found to be correct

3. BRIDGES—INJURIES FROM BREAKING—EVIDENCE.

Under Highway Law, Laws 1890, p. 1205, c. 568, § 154, providing that no town shall be liable for any damage resulting by reason of the breaking of any bridge by any vehicle and load together weighing four tons or more, in estimating the weight of a load of stone being transported over a bridge, the weight of the front wheels of a buckboard fastened to the stone wagon by a chain, and on the bridge when the same fell, was to be considered in determining what weight was being transported over the bridge.

4. SAME—SUFFICIENCY.

Under Highway Law, Laws 1890, p. 1205, c. 568, § 154, providing that no town shall be liable for any damage from the breaking of any bridge under a vehicle and load together weighing four tons or more, evidence examined, in an action against a town for damages resulting from the breaking of a bridge, and *held* to show that the load being transported over the bridge was of more than four tons in weight.

Appeal from Trial Term, Ulster County.

Action by Thomas Kelly, as administrator, against the town of Saugerties. From a judgment for plaintiff, and from an order denying a motion to set aside the verdict and for a new trial, defendant appeals     Reversed.

The action is to recover damages for the death of plaintiff's intestate, caused, as it is claimed, by the negligence of the highway commissioner of defendant town in failing to keep in repair a bridge upon one of the highways of said town. The defenses relied upon were: First, that the bridge was not upon one of the highways of the said town; secondly, that the highway commissioner was not guilty of negligence; thirdly, that the load which was being transported over the said bridge exceeded four tons in weight. These questions were all submitted to the jury and have been resolved in favor of the plaintiff. From the judgment entered upon the verdict, and from an order denying a motion for a new trial, this appeal has been taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and KELLOGG, JJ.

John J. Linson, for appellant.

Carroll Whittaker (William D. Brinner and John W. Searing, of counsel), for respondent.

SMITH, J. By section 154 of the highway law (Laws 1890, p. 1205, c. 568) it is provided that:

"No town shall be liable for any damage resulting to person or property, by reason of the breaking of any bridge, by transportation on the same, of any vehicle and load, together weighing four tons or over."

The plaintiff's intestate was driving a load of stone across the bridge from the quarry of one Van Steenbergh. Four horses were drawing the load. The horses had just passed over when the bridge fell. Upon the wagon was the weight of the stone, the weight of plaintiff's intestate, and the weight of the tools that were thereupon. That plaintiff's intestate weighed 137 pounds, that the wagon itself

weighed 1,675 pounds, that the tools weighed 60. pounds, does not seem to be questioned. The contest arose upon the weight of the stone itself which was upon the wagon. Shortly after the accident one Harry Wells, apparently a disinterested witness, went into the creek below where the bridge fell and took out six 20-inch pieces of curbstone, one 5x16-inch piece of curb, one 4x16-inch curb, and one 20-inch corner. This makes nine pieces. Thereafter he was told that there were ten pieces upon the load, and went back, and under the water found one more 4x16-inch curb. Little question seems to be made that the nine pieces first taken out were upon the load that was being transported. Some question is made as to whether the tenth piece was upon that load. The fact that it was, however, seems to us to be demonstrated by the testimony of Ernest Van Steenbergh, the son of the owner of the quarry from where this stone came. He swears that there were two 4x16-inch curb pieces, and this piece is necessary to make a second piece of that measure. Furthermore, this piece was pointed out to Van Steenbergh, who identified it as one of the pieces that was upon the load that morning. The weight of the stone upon these scales amounted to 6,200 pounds. This, together with the weight of the wagon, the man and the tools, brings the weight of the stone wagon and its contents as 8,072 pounds, or more than four tons.

The force of this evidence is sought to be broken by two classes of evidence: First, it is claimed that the scales were not true. The only evidence of that fact is the evidence of one witness, who swears that some years prior thereto he had weighed horses upon the scales, and that the weight varied, depending upon the place in which the horses stood upon the scales. This is denied by Wells, but the fact also appears that this was while the scales stood in front of the store of one Gray. In December, 1903, the scales had been removed to the house of the said Wells and there put in shape, and in December, 1904, just prior to the trial, these scales were tested by the county sealer of weights and measures and found to be accurate. This stone was weighed in June, 1904, prior to this test. The evidence, however, is to the effect that the scales had not been altered in any way after that time. In view of these facts, even if the jury should have believed the testimony that the scales were untrue while they were located in front of the store of Gray, they are not authorized to reject the testimony of the weight after the scales were removed and placed where they were afterwards legally tested and found to be accurate. The second class of testimony adduced in answer to the defendant's proof is the testimony of certain witnesses to the weight of a cubic foot of bluestone. From the measurement of these stone they claim that the weight of the stone upon the load was about 5,700 pounds, instead of 6,200 pounds. These witnesses, however, do not claim to have weighed this stone or to have weighed any stone from this quarry. Their testimony is as to the weight of an exact cubic foot of bluestone, as I understand. It is common knowledge that stone prepared for curbing is not entirely trimmed to exact measurement. The part that naturally would go under ground is usually, if not always, left in the rough,

and the actual weight of the stone is considerably more than it would be if the stone were trimmed to the exact dimensions called for. This fact renders the abstract evidence as to the weight of a cubic foot of bluestone of little value. The evidence of Wells as to the actual weight of this stone upon scales which were thereafter tested and found to be correct cannot be arbitrarily ignored by the jury or discredited. The stone was at the time of the trial within 50 feet of those scales, and, if Wells' testimony had been doubted by the plaintiff, it could have been easily disproven, if untrue.

We have assumed in this discussion that the statute refers to the weight of the load which was upon the bridge between the abutments. We have not considered the additional weight to the load by reason of the weight of the buckboard and the man in the buckboard. That buckboard was fastened to the stone wagon by an eight-foot chain. In view of this fact it is difficult to understand why the two front wheels of the buckboard, at least, were not upon the span of the bridge between the abutments at the time that the bridge fell. If so, such additional weight as that would give must be added to the weight of the stone wagon in determining what weight was being transported over the bridge. We are of the opinion that the load being transported over the bridge was demonstrably of more than four tons in weight, and that, within the provision of the statute quoted, the town is therefore relieved from liability for this accident.

The judgment and order should therefore be reversed, and new trial granted, with costs to appellant to abide the event. All concur.