(68 Misc. Rep. 618.)

## O'BRYAN v. STATE.

(Court of Claims of New York. August. 1910.)

1. CANALS (§ 18ᵛ)—STATES—CLAIMS—EXTENT OF LIABILITY—"INDIVIDUAL OR CORPORATION"—"TOWN."

Code Civ. Proc. § 264, provides that no award shall be made on any claim against the state, except upon such legal evidence as would establish liability against an individual or corporation. Canal Law (Consol. Laws, c. 5) § 47, provides that no judgment shall be awarded by the Court of Claims for damages from neglect or conduct of any state officer having charge of canals, or from any accident connected with the canals, unless the facts make out a case which would create a legal liability against the state, were they established in court against an individual or corporation. *Held,* that the phrase "individual or corporation" includes a town; Town Law (Consol. Laws, c. 62) § 2, defining a "town" as a municipal corporation comprising the inhabitants within its boundaries.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 18.*

For other definitions, see Words and Phrases, vol. 8, pp. 7019–7029; vol. 8, p. 7817.]

2. CANALS (§ 18*)—STATES—CLAIMS—INJURY FROM CANAL BRIDGE—LIABILITY.

A town highway commissioner and intestate, driving a traction engine weighing 4½ tons attached to a road scraper, approached a state canal bridge, which had been repaired about a year before, and, regarding it as safe, placed timbers over it lengthwise, and while intestate was on the engine and the highway commissioner was ahead directing its course, the bridge collapsed, killing intestate. The old highway law (Laws 1890, c. 568, § 154) provided that no town should be liable for damages from the breaking of any bridge by transportation over it of a vehicle and load weighing four tons or over. One hundred and fourteen days before the accident the specified weight of the load was changed by the new highway law (Laws 1909, c. 30 [Consol. Laws, c. 25] § 331) to eight tons or over. *Held* that, as there could be no recovery for intestate's death against the town, there could be no recovery against the state on the ground of the state's negligence in failing to strengthen the bridge, as the time which had elapsed between the accident and the date when the new highway law took effect was not sufficient to charge the state with negligence in failing to construct the bridge to meet the requirements of the increased weight.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 18.*]

3. CANALS (§ 18*)—STATES—CLAIMS—INJURY FROM CANAL BRIDGE—LIABILITY.

Intestate, after examining the bridge, having proceeded to cross it, with an engine weighing more than the maximum which the bridge, as constructed, was required to carry, together with his own weight and the road scraper attached to the engine, assumed the risk of injury.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 18.*]

Claim by Lina O'Bryan, as administratrix, against the State, for damages from decedent's death. Claim dismissed.

J. A. Johnson, for claimant.
Edward R. O'Malley, Atty. Gen., for the State.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

RODENBECK, J. The claimant's intestate met his death while driving a traction engine over a state bridge, known as the "Pecksport Bridge," which spans the old Chenango Canal, now used as a canal feeder, in the town of Eaton, Madison county, May 31, 1909. He was working for the highway commissioner of the town as an engineer, and was driving a traction engine weighing 4½ tons, and when nearly over the bridge the engine broke through the bridge and claimant's intestate was killed.

The bridge was built about 13 years before the accident, was 26½ feet long between the abutments, 14 feet wide, and consisted of a wooden beam and truss on each side, with a needle beam through the center, with joists resting on the abutments and on the needle beam, and hemlock plank flooring. The bridge had been repaired about a year before the accident, by placing five new girders on each side of the needle beam and reflooring the entire bridge. As the intestate and the highway commissioner approached the bridge, they examined it, and, regarding it as safe, placed timbers over the bridge lengthwise on each side for the wheels of the engine to run upon; and, while the intestate was in the cab of the engine and the highway commissioner was ahead directing his course, the bridge gave way after the rear wheels of the engine had passed 2½ feet over the needle beam.

The liability of the state for the death of claimant's intestate rests entirely upon statute. The right to file a claim against the state for the intestate's death undoubtedly accrued to the claimant (Canal Law [Consol. Laws, c. 5] § 47; Code Civ. Proc. § 264); but the liability of the state is limited to cases where the facts would create a legal liability, were the same established in evidence in a court of justice against an individual or a corporation (Canal Law, § 47; Code Civ. Proc. § 264), so that if, under the facts in the case before us, the town of Eaton would not be liable, were the bridge in question a town bridge, no liability attaches to the state.

The provision of the Code of Civil Procedure is as follows:

"In no case shall any liability be implied against the state, and no award shall be made on any claim against the state except upon such legal evidence as would establish liability against an individual or corporation in a court of law or equity." Section 264.

The provisions of the canal law are as follows:

"There shall be allowed and paid to every person sustaining damages from the canals or from their use or management, or resulting or arising from the neglect or conduct of any officer of the state having charge thereof, or resulting or arising from any accident, or other matter or thing connected with the canals, the amount of such damages to be ascertained and determined by the proper action or proceedings before the court of claims; but no judgment shall be awarded by such court for any such damages in any case unless the facts proved therein make out a case which would create a legal liability against the state, were the same established in evidence in a court of justice against an individual or corporation." Canal Law, § 47.

The expression "individual or corporation," used in the foregoing provisions, includes a town, since it was the manifest intention of the Legislature that the state should be liable upon claims made against

it only where a recovery could be had on similar claims in the ordinary courts of the state against other parties. For certain purposes a town is regarded as a corporation. General Municipal Law (Laws 1909, c. 29 [Consol. Laws, c. 24]) § 2. The town law (Consol. Laws, c. 62) defines a town as a corporation:

"A town is a municipal corporation comprising the inhabitants within its boundaries, and formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as have been, or may be conferred or imposed upon it by law." Town Law, § 2.

If there is any statute which would relieve the town of Eaton from liability under the facts in this case, the same statute would operate to relieve the state. Warner v. State of New York, 132 App. Div. 611, 117 N. Y. Supp. 108. Such a statute is found in the highway law:

"No town shall be liable for any damages resulting to person or property, by reason of the breaking of any bridge, by transportation over the same of any vehicle and load together weighing four tons or over but any owner of such vehicle or load, or other person engaged in transporting or driving the same over any bridge, shall be liable for all damages resulting therefrom." Highway Law (Laws 1890, c. 568) § 154.

The highway laws of the state were investigated by a committee of the Legislature, and a revision of these laws was presented to the Legislature of 1909 for enactment; and in the re-enacted highway law the provisions of the old highway law became section 331 of the new highway law, as follows:

"No town shall be liable for any damage resulting to person or property by the reason of the breaking of any bridge, sluice or culvert, by transportation on the same of any traction engine, portable piece of machinery, or of any vehicle or load, together weighing eight tons or over, but any owner thereof or other person engaged in transporting or directing the same shall be liable for all damages resulting therefrom." Highway Law (Laws 1909, c. 30 [Consol. Laws, c. 25]) § 331.

It will be observed that one of the changes made in the section of the old highway law was in the maximum weight that a town bridge was required to sustain. This weight was changed from "four tons or over," as it appeared in the old highway law, to "eight tons or over," as it appears in the new highway law.

The foregoing provisions being the measure of the state's liability, claimant is not entitled to recover. The weight of the engine alone was 4½ tons. In addition to this weight there was upon the engine operating it the intestate, who weighed 160 pounds, and the engine was drawing a road scraper, which further added to the total strain on the bridge. The intestate and the highway commissioner had crossed the bridge about a year previous with the same engine, and about that time it had been repaired by placing five new girders on each side and reflooring the entire bridge. As they approached the bridge on the day of the accident, they examined it, and decided that it was safe to cross. They procured timber to lay upon the floor of the bridge for the wheels of the engine to pass over, and placed these so that the ends of the 18-foot timbers were some distance from the abutments of the bridge. These beams, as placed, were an added

weight to the bridge, instead of a support, as they might have been if they had been placed from the needle beam to each abutment. As the rear wheels of the engine passed over the needle beam and about 2½ feet therefrom the engine crashed through the bridge. It appears that there was some decay at the ends of the girders which remained after the accident hanging to the bridge; but the timbers appeared to be sound where they broke, and the breaks were fresh breaks. The conclusion from the evidence is that the bridge was in safe condition for ordinary travel, but was not sufficiently strong to bear the weight of the load of 4½ tons which the intestate undertook to drive over it, and under these facts the state is not liable.

While the provisions of the new highway law prescribed a maximum weight of eight tons, this provision had only been in force since February 17, 1909, or 114 days before the accident, which occurred May 31, 1909. The time that had elapsed between the date the highway law became effective and the date of the accident is not sufficient to charge the state with negligence in not reconstructing the bridge to meet the requirements of the increased load.

At the time that the bridge was constructed and repaired it was only required to carry a load of four tons, and any person undertaking to draw a larger load than four tons over the bridge while the old highway law was in force did so at his own risk. The intestate and the highway commissioner are presumed to have known of the provision of the town law prescribing the maximum weight that town bridges were required to sustain, and they must have known of the weight of the engine which they undertook to drive over this bridge. Both of them examined the bridge, and had as good knowledge of its condition as the state. The highway commissioner, who accompanied the intestate, had inspected the bridge, was familiar with its condition, and was an expert on the strength of bridges. In assuming to pass over it with the knowledge that he had as to the weight of the load and the condition of the bridge, the claimant assumed the risk; and the claim should be dismissed, whether we view it from the standpoint of the alleged negligence on the part of the state (Kelly v. Town of Saugerties, 110 App. Div. 561, 97 N. Y. Supp. 177), or from the standpoint of contributory negligence on the part of the intestate (Johnson v. Town of Denning, 106 App. Div. 343, 94 N. Y. Supp. 532; Spencer v. Town of Sardinia, 42 App. Div. 472, 59 N. Y. Supp. 412).

SWIFT, J. (concurring). This is a claim for personal injuries to the husband of claimant, Orian O'Bryan, resulting in his death on the 31st day of May, 1909, through the alleged negligence of the state in not properly maintaining a bridge over the Chenango Canal at Pecksport, in the county of Madison, N. Y. The deceased resided at West Eaton, in the county of Madison, N. Y., and was in the employ of Albert J. Goodsell, who was at that time highway commissioner of the town of Eaton.

The Chenango Canal, now used as a feeder for the Erie Canal, runs through the town of Eaton; and, at a little hamlet called Pecksport a highway crosses the Chenango Canal by a bridge constructed

and maintained by the state. This bridge was constructed of wood, about 26 feet long, resting on abutments on each side of the canal, and supported by a needle beam near the center of the bridge. This needle beam was supported by trusses or braces extending to each abutment, and raised above the bridge in the center with an iron rod passing from the point where the two braces join down through the needle beam and bolted to the same; the length of the bolt being 39 inches. The bridge was about 14 feet wide. There were two large stringers, reaching from one abutment to the other and resting on this needle beam in the center. These stringers were 10 inches by 12 inches. There were other stringers, reaching from each abutment to and resting upon the needle beam. These stringers were laid lengthwise, being 8 inches by 4 inches; the face of 4 inches resting upon the needle beam and being 8 inches in height. This bridge was rebuilt new in 1897. These stringers reaching from the abutment to the needle beam were placed about 2 feet apart and planks were nailed to the stringers. The planks were cut so as to fit inside and between the two large stringers on either side of the bridge. In April, 1907, this bridge was repaired by the state. Ten new stringers were put in, reaching from the abutment to the needle beam, five stringers on each side of the needle beam, and the whole bridge was planked with new plank 3 inches thick. These stringers were sound and new, and were purchased of the Hamilton Lumber Company at that time. The old stringers in the bridge were not removed, but the ten new ones were added, and, with the addition of the new stringers, left the stringers about one foot apart. The abutments were of stone.

On the 13th day of May, 1909, the highway commissioner, Mr. Goodsell, was at work upon the highways in the town of Eaton, and, in the progress of his work, attempted to cross this bridge with a traction engine which was drawing a Climax road machine. The deceased was the engineer on the engine. The engine had passed about half way over the bridge, so that the front wheels were about 2 feet beyond the needle beam, and the large drive wheels, upon which the weight of the engine principally rested, were between the abutment and the needle beam, when the stringers beneath the drive wheels of the engine gave way, and the engine dropped through the floor of the bridge into the canal, a distance of about 12 feet, and the claimant's husband was killed. The two long stringers, 10 inches by 12 inches, reaching from one abutment to the other, did not break, nor did the needle beam or trusses. One-half the flooring from one abutment to the needle beam and the stringers that supported the planking went down into the canal.

Mr. Goodsell, the highway commissioner, says that when they approached the bridge with the engine they stopped. Goodsell examined the bridge before going upon it, looked at the bridge from the under side, and says he saw nothing wrong with the bridge; that he thought the stringers were sufficient, and that he found nothing about the bridge to indicate that it was unsafe. The engine weighed about 4½ tons, had a supply of coal and water tank holding about three barrels of water in addition to its weight, and was drawing a Climax

road machine, at the time it went through the bridge. Mr. Goodsell laid plank and scantling lengthwise of the bridge upon which to run the wheels of the engine, so as to distribute the weight of the engine more evenly; but the planks laid by Mr. Goodsell did not reach the abutment on either side, but rested across the needle beam. The bridge was nearly at a grade with the highway. There was some testimony of Goodsell that the ends of some of the stringers were rotten; but they were evidently some of the old stringers, which had not been removed in 1907, at the time the bridge was repaired.

I am of the opinion, from the facts established by the evidence in this case, that the claimant cannot recover. Two years before the accident the bridge had been repaired, with ten new stringers put in besides the old ones, and the bridge replanked. There was no improper construction of the bridge. The state had no actual notice that the bridge was unsafe. There was nothing in the appearance of the bridge, from an examination made just before the accident, to indicate that it was unsafe. There was nothing that could be construed as a constructive notice to the state that the bridge was unsafe. The highway commissioner, who, from the nature of his work, must have been familiar with bridges and their construction, made an examination before attempting to cross and considered it safe; and I fail to see, under such circumstances, how any negligence can be charged against the state. The bridge broke with the weight of this traction engine. It was an accident without legal liability. The claim should be dismissed.

Claim dismissed.